IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JULIE A. HUDSON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br><br>Case No. 2:10-CV-245 TS |

This matter comes before the Court on Plaintiff Julie A. Hudson's appeal from the decision of the Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income. Having considered the arguments set forth by the parties, reviewed the factual record, relevant case law, and being otherwise fully informed, the Court will affirm the administrative ruling, as discussed below.

I.  STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3] *Id*.

[4] *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5] *Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

## II. BACKGROUND

A. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income on March 3, 2008.[7] Plaintiff's claim was initially denied on April 4, 2008,[8] and upon reconsideration on June 11, 2008.[9] Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 22, 2009.[10] The ALJ issued her decision on August 18, 2009, finding Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on February 24, 2010.[12] Plaintiff then filed the instant action.

B. MEDICAL HISTORY

Plaintiff has a long history of degenerative disc disease in her lower back.[13] A July 2007 CT scan showed degenerative disease of the L4-L5.[14] Plaintiff also had a diffuse disc bulge at

---

[7] R. at 121-30.

[8] *Id*. at 51-52.

[9] *Id*. at 53-54.

[10] *Id*. at 10, 22-50.

[11] *Id*. at 10-20.

[12] *Id*. at 1-3.

[13] *Id*. at 225, 232.

[14] *Id*. at 234, 275.

L4-L5 and a modest central disc bulge at L5-S1.[15] No other significant abnormalities were noted and an epidural steroid injection was recommended.[16]

On September 1, 2007, Plaintiff presented to Dr. Chad Swanson, complaining of back pain.[17] Plaintiff had no weakness or numbness.[18] An examination revealed no swelling, erythema, or edema, but did reveal tenderness in her lower back.[19] Plaintiff was diagnosed with low back pain and prescribed medication.[20]

On September 18, 2007, an x-ray of Plaintiff's cervical spine revealed degenerative changes of the spine, specifically disc space narrowing of the C4-5, C5-6, and C6-7.[21] However, no soft tissue swelling or fracture was noted.[22]

In April 2008, Plaintiff was seen by Dr. Pahl Bench.[23] Upon examination, Dr. Bench noted that Plaintiff had increased lumbar lordosis, some pain on palpation of the lumbar spine, no muscle spasm, good range of motion in her extremities, normal gait, and no muscle wasting.[24]

---

[15] *Id*. at 275.

[16] *Id*.

[17] *Id*. at 287.

[18] *Id*.

[19] *Id*. at 288.

[20] *Id*.

[21] *Id*. at 273.

[22] *Id*.

[23] *Id*. at 567-68.

[24] *Id*. at 567.

Dr. Bench assessed low back pain and noted that Plaintiff would benefit from weight reduction, pain medication, and strengthening exercises.[25]

Also in April 2008, Dr. Lewis Barton reviewed the medical evidence in the record and assessed Plaintiff's physical residual functional capacity.[26] Dr. Barton concluded that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk (with normal breaks) for six hours in an eight-hour workday; sit for about six hours in a workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl.[27] Dr. Barton found no manipulative, visual, communicative, or environmental limitations.[28]

In July 2008, Plaintiff was seen by Dr. C. William Bacon.[29] Dr. Bacon noted that Plaintiff's gait was unremarkable, though she had some pain amplification.[30] Plaintiff had normal muscle strength in her upper and lower extremities.[31] Her reflexes and sensation were also normal.[32] Plaintiff had no tenderness in her lower or upper extremities.[33] She had a full

---

[25]*Id*. at 567-68.

[26]*Id*. at 569-78.

[27]*Id*. at 572-73.

[28]*Id*. at 574-75.

[29]*Id*. at 607-10.

[30]*Id*. at 607.

[31]*Id*. at 608.

[32]*Id*. at 608-09.

[33]*Id*. at 609.

5

range of motion in her cervical spine, but Plaintiff's range of motion in her lumbar spine was limited.[34] Plaintiff's x-ray showed "a little bit of loss of lumbar lordosis," but "[o]verall the disk space heights seem to be only modestly narrowed, very slight scoliosis."[35] Plaintiff was assessed with severe low back pain and an MRI was ordered.[36] The MRI revealed degenerative disc disease to some extent at L2-3 through L5-S1 with "shallow disk bulges and disk osteophyte complexes with a relatively mild encroachment on the neural foramina."[37] Additionally, Plaintiff had a "synovial cyst that projects into the vertebral canal from the left facet joint at L4-5."[38]

In addition to her back pain, Plaintiff has a history of migraine headaches.[39] Plaintiff's migraines have led to numerous trips to the hospital.[40]

Plaintiff saw Dr. Marc Udall in July 2008 on a complaint of back pain.[41] Dr. Udall noted that Plaintiff was alert and communicative, could move all extremities in a graceful and

---

[34]*Id.* at 609.

[35]*Id.* at 610.

[36]*Id.*

[37]*Id.* at 604-05.

[38]*Id.* at 605.

[39]*Id.* at 226, 231, 240, 285.

[40]*See id.* at 372-474.

[41]*Id.* at 590.

coordinated fashion, had normal reflexes, had a normal gait, and was able to transfer from table to chair without difficulty.[42] Plaintiff was prescribed pain medication.[43]

In August 2008, Dr. Udall completed a form for the Utah Department of Workforce Services.[44] On that form, Dr. Udall indicated that Plaintiff's back pain made her completely unable to work.[45] Dr. Udall indicated that the condition was expected to last nine months.[46]

Later in August, Plaintiff informed Dr. Udall that she was working out in the pool and doing better.[47]

In April 2009, Dr. Udall completed another form for the Utah Department of Workforce Services.[48] On that form, Dr. Udall opined that Plaintiff could not work, but noted that he would prefer Plaintiff be evaluated by another doctor to evaluate her ability to work.[49]

In May 2009, Dr. Udall filled out a Residual Functional Capacity Questionnaire.[50] On that form, Dr. Udall indicated that Plaintiff could walk less than one city block; could sit for 15

---

[42]*Id.* at 591.

[43]*Id.* at 591-92.

[44]*Id.* at 597.

[45]*Id.*

[46]*Id.*

[47]*Id.* at 599.

[48]*Id.* at 674.

[49]*Id.*

[50]*Id.* at 690-92.

minutes at one time, for a total of one hour per day; could stand/walk for 10 minutes for a total of one hour per day; and could occasionally lift less than 10 pounds.[51] Dr. Udall also opined that Plaintiff would need to take a 30-40 minute break every 15 minutes and would be absent more than four times per month.[52]

C.    HEARING TESTIMONY

At the hearing, Plaintiff was represented by counsel. In his opening statement, counsel made clear that there were two main issues which prevented Plaintiff from working: back problems and migraine headaches.[53] Counsel did not contend that Plaintiff had any mental impairments or limitations.

Plaintiff testified at the hearing that she had chronic back pain and rated the pain as 10 out of a scale of 10.[54] Plaintiff stated that she had to drop out of a singing group because of her back problems,[55] but that she was able to sing in another group that only practiced once a week and performed twice a year.[56] Plaintiff also testified the she experienced migraine headaches, but

---

[51] *Id*. at 690-91.

[52] *Id*.

[53] *Id*. at 24.

[54] *Id*. at 29-30.

[55] *Id*. at 30-31.

[56] *Id*. at 31-32.

they went away quickly with medication.[57] Plaintiff briefly referenced her use of xanax for anxiety and other medication,[58] but stated she had no side effects from any of her medications.[59]

Plaintiff testified that she could sit comfortably for up to 30 minutes and walk less than a block.[60] Plaintiff stated that she could lift a gallon of milk and had to lie down for 11 to 13 hours per day.[61] Plaintiff further stated that she drives three to four times per week, cooks meals, and sometimes does the dishes.[62]

A medical expert testified at the hearing. The medical expert testified that Plaintiff's subjective functional limitations, as well as the limitations identified by Plaintiff's treating physician Dr. Udall, were out of proportion to the objective medical evidence in the record.[63]

A vocational expert also testified at the hearing. The ALJ asked the vocational expert to consider a hypothetical person who could do sedentary work, with the following limitations: a sit/stand option at will; no climbing ladders, ropes, or scaffolds; occasional postural changes; avoid concentrated exposure to vibration and rough or uneven surfaces; and avoid all exposure to

---

[57]*Id*. at 34-36.

[58]*Id*. at 28, 36.

[59]*Id*. at 36.

[60]*Id*. at 37.

[61]*Id*. at 38-39.

[62]*Id*. at 40-41.

[63]*Id*. at 42.

hazards, such as machinery and heights.[64] The vocational expert testified that such a person could perform Plaintiff's past work as a telemarketer and could also do the sedentary unskilled job of a touch-up worker, semi-conductor bonder, and a clerical addresser.[65] The vocational expert testified that his testimony was consistent with the *Dictionary of Occupational Titles* ("DOT").[66]

D.  THE ALJ'S DECISION

The ALJ issued her decision on August 18, 2009.[67] The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claims. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 18, 2008, the alleged onset date.[68] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the spine; migraine headaches; and obesity.[69] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[70] At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a telemarketer, as well as the other occupations of touch-up

---

[64]*Id*. at 45.

[65]*Id*. at 45-46.

[66]*Id*. at 49.

[67]*Id*. at 10-20.

[68]*Id*. at 12.

[69]*Id*.

[70]*Id*. at 13.

screener, semi-conductor bonder, and clerical addresser.[71] Therefore, the ALJ found that Plaintiff was not disabled.[72]

III. DISCUSSION

Plaintiff raises three issues in her brief: (1) whether the ALJ failed to properly evaluate Plaintiff's mental impairments; (2) whether the ALJ erred by rejecting the opinions of Plaintiff's treating physicians; and (3) whether the ALJ failed to support her step 5 findings with substantial evidence. The Court will address each argument in turn.

A.  PLAINTIFF'S MENTAL IMPAIRMENTS

Plaintiff first argues that the ALJ failed to properly evaluate her mental impairments. Plaintiff argues that there is medical evidence to support that she has been diagnosed with depression and anxiety, but that the ALJ made no mention of her mental impairments. As a result, Plaintiff argues that this matter must be reversed and remanded to allow the ALJ to evaluate Plaintiff's mental impairments.

Plaintiff's argument suffers from a fatal flaw: Plaintiff never sought disability on the basis of any mental impairment. Indeed, in the documents submitted with her application, Plaintiff complained of back problems and migraine headaches.[73] At the hearing before the ALJ, Plaintiff's counsel stated that the "two main issues" facing Plaintiff were degenerative disc

---

[71]*Id*. at 18-19.

[72]*Id*. at 19-20.

[73]*Id*. at 147.

11

disease and migraine headaches.[74] Plaintiff's counsel made no mention of any mental impairments. Thus, it is not surprising that the ALJ did not discuss any alleged mental impairments. It is true, as Plaintiff states, that the record contains scattered references to mental impairments. Specifically, the record references diagnoses for depression and anxiety and the treatment of those conditions with various medications.[75] However, Plaintiff did not claim that she was disabled due to a mental impairment at her administrative hearing.

The Tenth Circuit has stated:

> ALJs are not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment. As such, an ALJ is generally entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.[76]

Here, the ALJ provided Plaintiff and her counsel ample opportunity to present Plaintiff's claims. Despite this opportunity, Plaintiff did not allege disability due to mental impairments. Plaintiff cannot now allege error on the part of the ALJ for failing to consider an issue that was not presented below. Therefore, Plaintiff's argument must be rejected.

Further, there is insufficient evidence from which the ALJ could find that Plaintiff suffered a severe mental impairment. A "mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial*

---

[74]*Id*. at 24.

[75]*Id*. at 28, 150, 152, 194, 204, 230, 243, 244, 245, 246, 251, 253, 254, 257, 258, 285, 303, 490, 554, 596, 599, 618, 629, 657, 674, 690.

[76]*Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (quotation marks and citations omited).

12

*gainful work*."[77] At most, the record here suggests that Plaintiff has been diagnosed with depression and/or anxiety and that she has been prescribed medication for those ailments. There is nothing to suggest that Plaintiff's alleged mental impairment contributed to Plaintiff's inability to work. Therefore, the Court finds that the record supports the ALJ's decision not to find a severe mental impairment and not to include any mental limitations in the residual functional capacity assessment.

B.      TREATING PHYSICIAN

Plaintiff next argues that the ALJ erred in failing to properly evaluate the opinions of her treating physician, Dr. Udall.

In August 2008 and April 2009, Dr. Udall completed forms for the Utah Department of Workforce Services, in which he opined that Plaintiff could not work.[78] In addition, in May 2009, Dr. Udall filled out a Residual Functional Capacity Questionnaire.[79] On that form, Dr. Udall indicated that Plaintiff could walk less than one city block; could sit for 15 minutes at one time, for a total of one hour per day; could stand/walk for 10 minutes for a total of one hour per day; and could occasionally lift less than 10 pounds.[80] Dr. Udall also opined that Plaintiff would

---

[77]*Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (quotation omitted).

[78]R. at 597, 674.

[79]*Id*. at 690-92.

[80]*Id*. at 690-91.

13

need to take a 30-40 minute break every 15 minutes and would be absent more than four times per month.[81]

The ALJ made the following statement in relation to Dr. Udall's opinions:

Dr. Udall is a treating source. However, the undersigned Administrative Law Judge is not accepting these opinions as controlling [as] they are not well supported by medically acceptable clinical and diagnostic techniques, nor are they consistent with the doctor's own reports, as he consistently found claimant in no apparent distress and within <u>normal or, at most, mild findings</u>, including those found during neurological, motor, deep tendon, coordination, sensory and gait and station testing. Treatment notes and other examinations show a degree of limitation but not to the point suggested by Dr. Udall. In addition, Dr. Lipton testified at [the] hearing that the most recent statement/opinion of Dr. Marc Udall giving claimant highly restricted sedentary residual functional capacity was not consistent with the objective medical findings of record. For these reasons, Dr. Udall's opinions are afforded little weight in the findings made by the undersigned in regards to the claimant's ability, or lack thereof, to perform work-related activities.[82]

Plaintiff alleges that the ALJ erred in her evaluation of the opinions of Dr. Udall.

The ALJ, in reviewing the opinions of treating sources, must engage in a sequential analysis.[83] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[84] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in

---

[81]*Id*. at 690-91.

[82]*Id*. at 18.

[83]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[84]*Id*.

the record.[85]  If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[86]

This does not end the analysis, however.  Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[87]  Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[88]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[89]  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[90]

Plaintiff first argues that the ALJ erred in rejecting Dr. Udall's opinions.  As set forth above, the ALJ rejected Dr. Udall's opinions that Plaintiff could not work at all.  The ALJ also rejected the extreme limitations endorsed by Dr. Udall.  Having carefully reviewed the record,

---

[85]*Id.*

[86]*Id.*

[87]*Id.*

[88]*Id.* at 1301 (quoting *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[89]*Id.*

[90]*Id.*

the Court finds that there is substantial evidence to support the ALJ's rejection of such extreme limitations. A review of Dr. Udall's treatment notes reveals no such functional limitations. While there is certainly evidence to support a finding that Plaintiff suffered from a severe impairment of degenerative disc disease of the spine—which the ALJ found—there is not evidence to support such extreme functional limitations. Therefore, the Court finds that the ALJ correctly evaluated the opinions of Plaintiff's treating physician and her rejection of those opinions is supported by substantial evidence.

Plaintiff further argues that the ALJ's reliance upon the medical expert was improper. To this end, Plaintiff seizes on a misstatement by the medical expert, where he mistakenly referred to Exhibit 14F as Exhibit 7F.[91] This was later clarified during questioning from Plaintiff's counsel.[92] The Court cannot find that this misstatement presents a reason that the ALJ could not rely on the statements of the medical expert.

Finally, Plaintiff argues that the ALJ's rejection of Dr. Udall's opinions is flawed because his opinions were based, in part, on Plaintiff's mental impairments. For the same reasons discussed above, the Court must reject this argument.

C.  STEP 5 ANALYSIS

Plaintiff's final argument is that the ALJ erred in her step 5 analysis. In actuality, Plaintiff challenges the vocational expert's testimony in response to the ALJ's hypothetical. This

---

[91]R. at 42.

[92]*Id*. at 46-48.

testimony impacted the ALJ's residual functional capacity assessment which, in turn, impacts both steps 4 and 5 of the sequential analysis.

During the hearing, the ALJ asked the vocational expert to consider a hypothetical person who could do sedentary work with the certain limitations, including a sit/stand option.[93] The vocational expert testified that such a person could perform Plaintiff's past work as a telemarketer and could also do the sedentary unskilled job of a touch-up worker, semi-conductor bonder, and a clerical addresser.[94] The vocational expert testified that his testimony was consistent with the *Dictionary of Occupational Titles* ("DOT").[95]

Plaintiff argues that, because the DOT does not address a sit/stand option, the vocational expert's testimony created a discrepancy that was not resolved. Without some further explanation from the vocational expert, Plaintiff argues, the vocational expert's testimony cannot be considered substantial evidence. As a result, Plaintiff argues that this matter must be reversed and remanded to the ALJ.

SSR 00-4p requires that an ALJ inquire about and resolve any conflicts between a vocational expert's testimony regarding a job and the description of that job in the DOT.[96] The DOT does not describe a sit/stand options. However, the fact that the DOT does not address the

---

[93] *Id.* at 45.

[94] *Id.* at 45-46.

[95] *Id.* at 49.

[96] *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009).

subject of a sit/stand option does not necessarily create an inherent conflict.[97] As the DOT does not address the sit/stand option, it was reasonable for the ALJ to rely on the vocational expert's testimony. Therefore, the Court finds that substantial evidence supported the ALJ's decision at steps 4 and 5 and that it was free from harmful legal error.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court finds that the ALJ's evaluation and ruling is supported by substantial evidence. Therefore, the Commissioner's findings must be affirmed. Further, the Court finds that the ALJ applied the correct legal standard in determining that Plaintiff did not have a disability within the parameters of 20 C.F.R. § 404.1520 (a)-(f).

For the reasons just stated, the Court hereby AFFIRMS the decision below. The Clerk of the Court is directed to close this case forthwith.

DATED   November 9, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[97] *See, e.g., Zblewski v. Astrue*, 302 Fed. Appx. 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT.").